UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 0 9 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————————

DAMIEN D. MCINNIS,

           Plaintiff,

    v.                                     23-CV-821 (JLS)

TROOPER ASHLEY STANLEY #3449,
TROOPER ALEX KRAWCZYK #2573,
D.A. ANNA STARK, PHIL AVARO,
PEOPLE OF THE STATE OF NEW
YORK,

           Defendants.

———————————————————————

## DECISION AND ORDER

*Pro se* Plaintiff Damien D. McInnis, a pretrial detainee, filed this action on
August 11, 2023 against New York State Troopers Ashley Stanley ("Stanley") and
Alex Krawczyk ("Krawczyk"), as well as Chemung County Assistant District
Attorneys Anna Stark ("Stark") and Phil Avaro ("Avaro"), relating to Plaintiff's
June 5, 2023 arrest. Dkt. 1.

On August 25, 2023, Plaintiff filed another action related to the June 5, 2023
arrest—this time against Stanley, Krawczyk, and the People of the State of New
York. *See McInnis v. People of the State of New York*, No. 23-CV-889 (W.D.N.Y.

2023).  Plaintiff instituted both actions under 42 U.S.C. § 1983.  After Plaintiff paid the filing fees, the Court consolidated the cases.  Dkt. 8.[1]

Because Plaintiff was a prisoner, as defined in 28 U.S.C. § 1915A(c), at the time he commenced this action, the Court has screened the Complaint pursuant to 28 U.S.C. § 1915A(b).  *See also* 28 U.S.C. § 1915(h); *Gibson v. City Municipality of N.Y.*, 692 F.3d 198, 201 (2d Cir. 2012) ("the relevant time at which a person must be 'a prisoner' within the meaning of the PLRA in order for the Act's restrictions to apply is 'the moment the plaintiff files his complaint'") (citation omitted).

For the reasons below:

- Plaintiff's claims against the People of the State of New York, as well as his claims against Krawczyk and Stanley in their official capacities, are barred by Eleventh Amendment immunity and, therefore, are dismissed without prejudice for lack of subject matter jurisdiction;

- Plaintiff's claim for excessive force in violation of the Fourth Amendment against Krawczyk in his individual capacity is sufficient to proceed to service; and

- Plaintiff's remaining claims, which include claims for deliberate indifference to medical need, malicious prosecution, false arrest, violation of the right to

---

[1] Per the Court's consolidation order, the Complaint and exhibits originally filed in Case No. 23-CV-889, Dkt. 1 and 10, are deemed supplemental to the Complaint in the present case, *see* Dkt. 8 at 2, and are docketed in the present case at Dkt. 9 and Dkt. 9-1.

equal protection, and defamation, are dismissed <u>with leave to amend</u>, as directed below.

## DISCUSSION

I.    **SCREENING UNDER 28 U.S.C. § 1915A**

Because Plaintiff was a "prisoner"—as defined in 28 U.S.C. § 1915A(c)—when he commenced this action, the Court must screen his complaint under 28 U.S.C. § 1915A(b), even though he paid the filing fee.  *See Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004); 28 U.S.C. § 1915A(a).  Under § 1915A(b), the Court "shall dismiss" a complaint, or any portion of the complaint, if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

In evaluating the Complaint, the Court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam).  Though a *pro se* complaint alleging civil rights violations must be construed "liberally," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), it still must plead sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard requires "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* Detailed factual allegations are not required, but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## II.   THE COMPLAINT

Plaintiff sues Stanley, Krawczyk, Stark, Avaro, and the People of the State of New York, for excessive force, deliberate indifference to his medical needs, perjured affidavits, racial profiling, and defamation. He asserts that, on June 5, 2023, Krawczyk and Stanley "racially profiled" him on Route 56 in Elmira, New York. *See* Dkt. 9 at 4, 5.[2] According to Plaintiff, he was parked outside of a bar when approached by an officer he later learned was Stanley. Dkt. 1 at 11. Plaintiff asked if he was under arrest, had a panic attack, turned on his vehicle, and drove onto the thruway. *Id.* He was pulled over and exited his vehicle at which point he "was head butted, cuffed[,] thrown to the ground with [Krawczyk's] knees between [his] shoulder blades, being punched and struck [in his] head, face, lip, repeatedly while [he] was handcuffed laying on [his] stomach." *Id.* at 11. He then fell unconscious and woke up in the police station bleeding from the head. Dkt. 1 at 12.

As a result of the beating, Plaintiff "ha[s] glass in [his] left palm," a cut over his left eye, an "indent on [his] head," a pinched nerve in his tooth, sleepless nights, a scar on his right wrist, numbness in his hands, a bloody forehead, and a "busted" lip. Dkt. 9 at 5. He received no medical attention for any of his injuries. *Id.*

---

[2] As noted above, Dkt. 9 and 9-1 contain the Complaint and exhibits originally filed in Case No. 23-cv-889.

Stanley allegedly wrote "p[e]rjured statements" concerning the events of June 5, 2023, which resulted in Plaintiff's incarceration. *Id.* at 4. Avaro and Stark, the Assistant District Attorneys on Plaintiff's case, "played a major involvement into this." Dkt. 1 at 15. In addition, the "Chemung County D.A.['s] office had the info to exculpate [Plaintiff] and vacate [his] charges." Dkt. 1 at 4. But they "created a false narrative to keep [him] locked up hoping that [he] would except [sic] a plea for a crime [he] didn't do." *Id.* Plaintiff's "name was slandered," Dkt. 9 at 4, and he believes he is portrayed as "as someone who assaults state troopers and fle[es] on alleged chases." Dkt. 1 at 14.

Plaintiff attached several documents and exhibits to his Supplemental Complaint, including:[3] (1) a statement disputing Defendants' version of the events, discussing his driver's license suspension and its impact on his life (Dkt. 9-1 at 1-2); (2) his Abstract of Driving Record from the State of New York Department of Motor Vehicles, dated June 7, 2023 (Dkt. 9 at 12; Dkt. 9-1 at 40); (3) his NYSID Report/Fingerprint Response listing his arrests dating back to April 26, 2003 (Dkt. 9 at 13; Dkt. 9-1 at 44-45, 61-66, 68-69); (4) three photographs of a male law enforcement officer (Dkt. 9 at 14-15; Dkt. 9-1 at 36-37); (5) traffic tickets, incident reports, charging documents, and other state court records related to the June 5, 2023 incident (Dkt. 9 at 11, 16-19, 21; Dkt. 9-1 at 3, 42-43, 46-60, 67, and 70); (6) a

---

[3] Several of the documents Plaintiff filed contain personal identification information prohibited by Federal Rule of Civil procedure 5.2, such as full dates of birth and social security numbers. The Clerk of Court shall restrict the filing containing these documents. Dkt. 9-1. And Plaintiff must redact such information in any future filings.

request for and authorization to release medical records for Defendant Krawczyk
(Dkt. 9-1 at 38-39); (7) a slip of paper signed by New York State Police Alcotest 9510
Operator Ryan Dmochowski indicating that Plaintiff refused to undergo a blood-
alcohol test on June 5, 2023 (Dkt. 9 at 20; Dkt. 9-1 at 4); and (8) the grand jury
testimony provided by Krawcyzk and Stanley to a Chemung County grand jury on
June 8, 2023, regarding the events leading up to Plaintiff's arrest on June 5, 2023
(Dkt. 9 at 22-50, Dkt. 9-1 5-35).[4]

Plaintiff seeks various forms of relief—including money damages, for
Krawczyk and Stanley to be fired, for the windows of his vehicle to be fixed, and for
the glass in his hand and his damaged teeth to be fixed.  *See* Dkt. 1 at 5.

## III.   SECTION 1983 CLAIMS

To "state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that
the challenged conduct (1) was attributable to a person acting under color of state
law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the
Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d
400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.
1994)).  Section 1983 "itself creates no substantive rights; it provides only a
procedure for redress for the deprivation of rights established elsewhere." *Sykes v.
James*, 13 F.3d 515, 519 (2d Cir. 1993).

---

[4] The Court construes the Complaint as consisting of the form Section 1983
complaint as well as the documents attached to it. *See Cortec Indus., Inc. v. Sum
Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Section 1983 imposes liability "only upon those who actually cause a deprivation of rights," *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999), and the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). The Second Circuit has clarified that, in the wake of *Iqbal*, "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A "plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (internal quotation marks omitted).

The Court has, as it must, liberally construed the Complaint as alleging the following Section 1983 claims: (1) excessive force in violation of the Fourth Amendment; (2) deliberately indifferent denial of care for an objectively serious medical need in violation of the Fourteenth Amendment; (3) malicious prosecution in violation of the Fourth Amendment; (4) false arrest in violation of the Fourth Amendment; (5) racial profiling in violation of his right to equal protection under the law; and (6) defamation.

## A.    Eleventh Amendment Immunity

The Eleventh Amendment provides that, the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *State Emp. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting U.S. Const. amend. XI). Absent a state's consent to suit or an express statutory waiver of immunity, the Eleventh

Amendment bars a federal court from exercising subject matter jurisdiction over actions seeking retrospective relief against a state, regardless of the nature of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). *See also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004). Where a "court lacks subject matter jurisdiction," however, "it also lacks the power to dismiss with prejudice." *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

Here, Plaintiff lists "the People of the State of New York" as a Defendant. Dkt. 9 at 1. Section 1983 claims against the "People of the State of New York" are effectively claims against the State of New York. *Surpris v. City Ct. of New York, White Plains, Cnty. of Westchester*, No. 21-CV-7698, 2021 WL 5567751, at *2 (S.D.N.Y. Nov. 29, 2021). The State of New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Accordingly, Plaintiff's claims against the "People of the State of New York" are dismissed without prejudice. *See Surpris*, 2021 WL 5567751, at *2 (Section 1983 claims against "the People of the State of New York" must be dismissed as barred by Eleventh Amendment immunity).

In addition, Stanley and Krawczyk are sued in both their individual and official capacities. Dkt. 1 at 2; Dkt. 9 at 2. Plaintiff alleges that Stanley and Krawczyk are New York State Troopers, Dkt. 1 at 2; Dkt. 9 at 2, and, therefore, they are employees of New York State. To the "extent that a state official is sued

for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

As to his official capacity claims against Stanley and Krawczyk, Plaintiff cannot avoid the jurisdictional bar created by the Eleventh Amendment under the exception established in *Ex parte Young*, 209 U.S. 123 (1908). Under that doctrine, "a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" *Brown v. New York*, 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)).

Here, Plaintiff seeks prospective injunctive relief—that is, the termination of Krawczyk and Stanley from their jobs based on their actions on the night of June 5, 2023. He does not, however, allege an "ongoing violation of federal law" by these Defendants—he complains only about completed alleged harms. The *Ex parte Young* exception, therefore, does not apply.

In sum, Plaintiff's claims against Stanley and Krawczyk in their official capacities, as well as his claims against the People of the State of New York, are dismissed without prejudice because they are barred by the Eleventh Amendment. *See, e.g., Malarczyk v. Lovgren*, No. 19-CV-42, 2022 WL 374271, at *4 (N.D.N.Y. Feb. 8, 2022) ("[A]n official-capacity § 1983 claim against either Trooper-defendant

is really a § 1983 claim against New York State, or perhaps the New York State Police.  In either case, the real party in interest—the State or the State Police—would be immune from § 1983 claims for money damages in federal court." (citation omitted)); *Sonnick v. Budlong*, No. 20-CV-410, 2020 WL 4345004, at *1 (N.D.N.Y. July 29, 2020) (dismissing without leave to amend all claims brought against a New York State Trooper, who was sued in his official capacity only, as barred by Eleventh Amendment immunity).

### B.   Prosecutorial Immunity

Plaintiff also sues Chemung County Assistant District Attorneys Stark and Avaro—who allegedly were the prosecutors involved in his case.  Prosecutors performing traditional prosecutorial activities are afforded absolute immunity in Section 1983 suits.  *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).  In particular:

> The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations.

*Barrett v. United States*, 798 F.2d 565, 571-572 (2d Cir. 1986) (internal citations omitted).  Once a "court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).  In *Bernard*, the plaintiff alleged that prosecutors presented false evidence and withheld exculpatory

evidence in grand jury proceedings. *Id.* And the Second Circuit concluded that "such conduct to lie at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process." *Id.* (collecting cases). The Court reversed the district court's decision and remanded "for the entry of an order dismissing the[] claims on the ground of absolute immunity." *Id.* at 505.

Here, Plaintiff alleges only that "the Chemung County D.A.['s] office had the info to exculpate [him] and vacate [his] charges." Dkt. 1 at 4. But "they created a false narrative to keep [him] locked up hoping that [he] would except [sic] a plea for a crime [he] didn't do." *Id.* Plaintiff does not, however, allege that Defendants Stark and Avaro acted outside the scope of their duties as prosecutors and, therefore, their conduct is covered by absolute immunity. Accordingly, this claim is dismissed with leave to amend.

### C.   Individual Capacity Claims Against Krawczyk and Stanley

#### 1.   Excessive Force

The "Supreme Court has made it clear that excessive force that is used by officers arresting a suspect ought to be characterized as invoking the protections of the Fourth Amendment, which guarantee citizens the right to be free from unreasonable seizures of the person." *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Force is excessive under the Fourth Amendment when it is "objectively unreasonable," *Graham*, 490 U.S. at 397, as viewed from the perspective of a reasonable police officer on the scene. *Id.* at 396.

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.  An individual does not need to sustain a severe injury to maintain an excessive force claim.  *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe").  *See also Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) ("Even in the arrest context, . . . the Second Circuit has indicated that a very minimal injury is sufficient to trigger potential liability") (citing *Robison*, 821 F. 2d at 923-24)).  The Second Circuit, moreover, has observed that, "because resistance to arrest does not give the officer license to use force without limit in response, there is no inherent conflict between a conviction for resisting arrest . . . and a finding that the police officers used excessive force in effectuating that arrest." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (internal quotation marks and alterations omitted).

Here, Plaintiff has alleged "several facts that give rise to a plausible inference," *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (summary order), that Krawczyk's use of force was objectively unreasonable under the circumstances facing him at the time.  For instance, Plaintiff alleges that Krawczyk beat him, even though Plaintiff had put his hands up, Dkt. 1 at 11; Dkt. 9 at 5—which is a posture ordinarily inconsistent with fleeing or attempting to resist arrest. Plaintiff also alleges that even after he was handcuffed—and was not in a position

to flee from or harm the troopers—Krawczyk continued to beat him to the point of unconsciousness.  Dkt. 1 at 5, 11; Dkt. 9 at 5.  On this record, Plaintiff's excessive force claim against Krawczyk in his individual capacity may proceed to service.[5]

### 2.   Denial of Medical Care

Courts in the Second Circuit have applied both the Fourth Amendment's objective unreasonableness standard and the Fourteenth Amendment's deliberate indifference standard to claims that pre-arraignment arrestees were denied medical treatment.  *Stinson v. Saint Vincent's Hosp.*, No. 20-CV-00704, 2022 WL 2047221, at *7 (D. Conn. June 6, 2022) (comparing cases).  The "Second Circuit has recently observed, however, that such pre-arraignment conditions of confinement claims should be treated as arising under the Fourteenth Amendment."  *Id.* (citing *Shakir v. Stankye*, 805 F. App'x 35, 40 (2d Cir. 2020) (summary order)).

Under the "applicable Fourteenth Amendment standard, '[a] pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions.'"  *Shakir*, 805 F. App'x at 40 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).  Particularly, "a plaintiff must demonstrate: (1) that an official 'denied [him] treatment needed to remedy a serious medical condition,' and (2) that the official did so 'because of his deliberate indifference to that need.'"  *Mills*, 216 F. App'x at 10 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)).

---

[5] Although this claim survives initial screening, the Court does not, at this juncture, make any determination as to whether the claim would ultimately survive a motion to dismiss or motion for summary judgment.

Here, the Court assumes, for purposes of initial screening, that the alleged injuries are sufficiently serious. *See, e.g.*, *Stinson*, 2022 WL 2047221, at *7 (plaintiff-arrestee plausibly alleged first prong of Fourteenth Amendment standard for denial of medical care claim based on allegations that he suffered facial contusions, dizziness, nausea, a severe headache, and a possible concussion after security guards punched him in the face and repeatedly banged his head on the floor).

Plaintiff's Complaint, however, states in a conclusory fashion that Plaintiff "did not receive any medical attention," Dkt. 1 at 5, without identifying *who* denied him medical treatment. The Complaint, therefore, fails to allege the second prong of the test—that any defendant denied him medical care and did so with deliberate indifference. The Complaint also fails to allege any Defendant's personal involvement in a constitutional violation. *See Tangreti*, 983 F.3d at 618. The claim that Plaintiff was unconstitutionally denied medical care in violation of the Fourteenth Amendment's due process clause, therefore, is subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1).

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal unless the Court "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Because the Court cannot rule out any possibility, however remote, that Plaintiff could state a claim

for deliberately indifferent denial of medical care in violation of the Fourteenth Amendment, Plaintiff may amend these claims.

Any amended complaint must include non-conclusory factual allegations (1) identifying *who* was personally involved in denying Plaintiff medical care, and (2) showing how their actions or omissions displayed deliberate indifference to his serious medical needs.

### 3.   Malicious Prosecution

To "prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).  The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York," and "indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010).

Here, certain documents attached to the Complaint suggest that Plaintiff was, in fact, indicted on criminal charges based on the events of June 5, 2023.[6]

---

[6] Because Plaintiff's allegations in the form portion of the Complaint refer to, and are based upon, his arrest on June 5, 2023 and subsequent criminal prosecution in state court, the Court takes judicial notice of the attached documents that relate to these topics. *See Amador v. United States*, No. 20-CV-10492, 2022 WL 902783, at *2 (S.D.N.Y. Mar. 28, 2022) ("The allegations in the Amended Complaint are sparsely pled but make direct reference to and are based upon Amador's prior state prosecution.  Therefore[,] the Court takes judicial notice of certain documents outside the Amended Complaint.").

Specifically, the grand jury minutes memorialize Krawczyk's and Stanley's testimony regarding Plaintiff's arrest and events leading up to it. *See* Dkt. 9 at 22-50, Dkt. 9-1 5-35. In addition, the N.Y. Crim. Proc. Law § 710.30 Notice, which is captioned in New York State Supreme Court, Chemung County, and bears Indictment No. 70266-23, informs Plaintiff of the statements he made to members of the New York State Police on June 5, 2023, and that the Chemung County District Attorney's Office intends to offer proof of those statements at the trial on Indictment No. 70266-23. Dkt. 9 at 18-19, 21. These documents, taken together, permit the reasonable inference that Plaintiff was, in fact, was indicted on charges stemming from his actions on June 5, 2023.

Under "New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). It "is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Id.*

Here, Plaintiff alleges that he is "incarcerated on p[e]rjured statements." Dkt. 9 at 4. But this conclusory statement is insufficient. *See Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order) ("The various iterations of Lewis's complaint fail to rebut th[e] presumption [of probable cause], essentially alleging only that the defendant officers *must have* fabricated evidence in light of

Lewis's version of the events and his ultimate acquittal. Such conclusory allegations are insufficient to counter the presumption of probable cause, and to allow a court to draw the reasonable inference that the grand jury's indictment was a result of fraud or other misconduct") (citing *Iqbal*, 556 U.S. at 679). *See also Demosthene v. City of New York*, No. 18-CV-1358, 2019 WL 181305, at *6 (E.D.N.Y. Jan. 10, 2019) (plaintiff's only non-conclusory allegation—that defendant falsely stated to prosecutors that plaintiff possessed a weapon at the time of the crime— was "too vague to rebut the presumption of probable cause established by plaintiff's indictment; on its own, this allegation fails to provide sufficiently specific notice of the fabricated evidence's source or form").

Moreover, Plaintiff has not plausibly alleged "actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Plaintiff asserts, without elaboration, that he was "racially profiled." Dkt. 1 at 4; Dkt. 9 at 4. Again, this conclusory statement is insufficient. *See McDaniel v. City of New York*, 585 F. Supp. 3d 503, 518 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CIV-11265, 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (plaintiff's allegations were too "barebone[s]" to plead malice with plausibility where he alleged that he "was racially profiled by [the defendants] and that the car's alleged broken taillight was merely a pretext to pull over the car and arrest him," and that the defendants "'had been arresting [him] for a while' and had ulterior motives for the instant arrest").

Furthermore, the malicious prosecution claim is premature.  Because "favorable termination is an element of a malicious prosecution claim, a plaintiff cannot state a claim if the relevant criminal proceeding is pending." *Sabino v. Port Auth. Police Dep't*, No. 21-CV-5731 (JGK), 2021 WL 3914092, at *2 (S.D.N.Y. Sept. 1, 2021) (citing *Bayan v. Sikorski*, No. 17-cv-4942, 2021 WL 1163653, at *5 (S.D.N.Y. Mar. 26, 2021); *Bussey v. Devane*, No. 13-CV-3660, 2013 WL 4459059, at *6 (E.D.N.Y. Aug. 16, 2013)).  As Plaintiff's criminal proceeding is allegedly ongoing, he necessarily cannot allege that it terminated in his favor.  Accordingly, this claim is dismissed for failure to state a claim.  *See* 28 U.S.C. § 1915A(b)(1).  Plaintiff may amend this claim to show, if possible, that his criminal proceedings terminated in his favor and to allege facts, if they exist, to support the other elements of a malicious prosecution claim.

### 4.   False Arrest

A claim under Section 1983 for false arrest is anchored in the Fourth Amendment's right to be free from unreasonable seizures, and its elements are substantially the same as its New York State law counterpart.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  To state a claim, a plaintiff must show that: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged, *id.* at 853, such as by the existence of probable cause.  *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003).

While indictment by a grand jury gives rise to a presumption of probable cause in malicious prosecution claims, the presumption "is totally misplaced when

applied in false [arrest] actions." *Savino*, 331 F.3d at 75 (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).  Rather, the existence of probable cause is assessed from the perspective of the arresting officer at the time of the arrest.  *See Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

Probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.  A finding of probable cause is not defeated simply because "it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994).

Here, plaintiff fails to state a claim for false arrest in violation of the Fourth Amendment.  Indeed, Plaintiff provides no factual allegations regarding what led up to his arrest; he merely asserts that he was "racially profiled," but provides no indication as to how.  Dkt. 1 at 4; Dkt. 9 at 4.  Furthermore, as discussed, Plaintiff fails to allege *who* arrested him—Krawczyk, Stanley, or a member of the "other agencies [that] were there." Dkt. 9 at 5.  *See also Johnson v. Tudisco*, No. 17-CV-8621, 2020 WL 363647, at *5 (S.D.N.Y. Jan. 21, 2020) (plaintiff's "brief recital of vague circumstances surrounding his arrest, without even an allegation that [the] [d]efendants did not have probable cause, is insufficient for the [c]ourt to infer that there was no probable cause for the arrest, even under a liberal interpretation of [his] pleadings").

Because the Court cannot rule out any possibility, however remote, that Plaintiff could state a claim for false arrest in violation of the Fourth Amendment, he may amend this claim to allege, if possible, non-conclusory facts asserting *who* was personally involved in subjecting him to an unlawful arrest and allege, and that the arrest was without probable cause.

5.    Equal Protection

Plaintiff, who is black, *see* Dkt. 9 at 13, alleges that he was racially profiled by Stanely and Krawczyk, Dkt. 1 at 4, 15, which the Court construes as an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It thus "requires the government to treat all similarly situated people alike." *Afr. Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002).

> There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause. A plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (internal citation omitted).

Here, Plaintiff fails to allege facts to support his claim of racial profiling, and the claim is wholly conclusory. He also fails to specify what, if any theory, of equal

protection supports his claim.  Therefore, this claim fails to meet the requirements

of Rule 8 of the Federal Rules of Civil Procedure.  A complaint does not comply with

Rule 8 if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, or

"'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678

(alteration in original) (quoting *Twombly*, 550 U.S. at 557).  *See also Parisi v. Coca-*

*Cola Bottling Co.*, 995 F. Supp. 298, 300-01 (E.D.N.Y. 1998) ("Where the allegations

are so baldly conclusory that they fail to give notice of the basic events and

circumstances of which the plaintiff complains, they are meaningless as a practical

matter and legally insufficient to state a claim").  Though a court is "obligated to

draw the most favorable inferences that [a plaintiff]'s complaint supports, [it]

cannot invent factual allegations that he has not pled." *Chavis v. Chappius*, 618

F.3d 162, 170 (2d Cir. 2010).  Accordingly, the Equal Protection claim is dismissed

with leave to amend.

## IV.  DEFAMATION CLAIMS

Lastly, Plaintiff asserts a defamation claim.  *See* Dkt. 9 at 4-5.  Defamation,

however, "is an issue of state law, not of federal constitutional law, and therefore

provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of*

*Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  A district court may, however, exercise

supplemental jurisdiction over state law claims where the relationship between a

plaintiff's federal and state claims present "but one constitutional 'case'" and "derive

from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S.

715, 725 (1966).  If "plaintiff's claims are such that he would ordinarily be expected

to try them all in one judicial proceeding," the Court will generally exercise supplemental jurisdiction if "judicial economy, convenience and fairness to litigants" weigh in favor of hearing the state claims at the same time. *Id.* at 725-26. *See also* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

Here, Plaintiff's defamation claim, as alleged, derives from the same operative facts as his federal claims (that is, his underlying arrest and criminal prosecution). The Court, therefore, will consider the claim for purposes of initial screening.

Under New York law, "a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

Here, Plaintiff alleges that his "name was slandered," Dkt. 9 at 4, and that "state trooper," "D.A. Weeden Wetmore['s] office," and "the local news stations" portrayed him "as someone who assaults state troopers and fle[es] on alleged chases." Dkt. 1 at 14. But Plaintiff's allegations are largely conclusory. He alleges that three organizations—the state troopers, the District Attorney's office, and unspecified news outlets—"portrayed" him in a negative way. But he fails to identify actual statements that were made, which members of these organizations

made the alleged defamatory statements, to whom the statements were made or "published," and how those statements harmed him.[7]  Accordingly, Plaintiff's defamation claim is dismissed with leave to amend.

## V.   SERVICE OF PROCESS

Plaintiff has paid the filing and administrative fees for this action and, therefore, is responsible for service of the Summons and Complaint.  Rule 4 of the Federal Rules of Civil Procedure provides that, "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."  Fed. R. Civ. P. 4(c)(3).

As such, the Clerk of Court shall send to Plaintiff a copy of the Court's "Notice Regarding Service of Summons of Complaint With Attached Request for U.S. Marshal Service."

## CONCLUSION

For the reasons above, Plaintiff's claims against the People of the State of New York, as well as his official capacity claims against Krawczyk and Stanley, are barred by Eleventh Amendment immunity and, therefore, are dismissed without prejudice under 28 U.S.C § 1915A(b).  Plaintiff's Fourth Amendment excessive force claim against Krawczyk in his individual capacity may proceed to service.

---

[7] The harms Plaintiff does identify consist of injuries he suffered due to the alleged use of excessive force, Dkt. 1 at 5, and the loss of his license in the ensuing court process, Dkt. 9-1 at 1-2—not from the alleged defamation.

Lastly, Plaintiff's claims for deliberate medical indifference, false arrest, equal protection, malicious prosecution, and defamation are dismissed <u>with leave to amend,</u> as directed above.  Plaintiff is advised that an amended complaint will **replace completely** the original complaint.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Any amended complaint, therefore, must include all factual allegations against each defendant so that the amended complaint stands alone as the only complaint that defendants must answer.

In addition, any amended complaint must comply with the redaction requirements set forth in Rule 5.2 of the Federal Rules of Civil Procedure, which provides, in relevant part, that:

> [u]nless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social security number . . . or birth date . . . the filing may include only . . . the last four digits of the social security number [and] the year of the individual's birth.

As such, if Plaintiff includes in an amended complaint the request for Krawczyk's medical records, located at Dkt. 9-1 at 38-39, he must redact the month and day of Krawczyk's birthday as well as the first 5 digits of his social security number.

## ORDER

IT HEREBY IS ORDERED that, to the extent Plaintiff asserts claims against the People of the State of New York, or against Stanley and Krawczyk in their official capacities, such claims are DISMISSED without prejudice for lack of subject matter jurisdiction under 28 U.S.C. § 1915A(b); and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint, as directed above, **by October 24, 2024**; and it is further

ORDERED that, in the event Plaintiff fails to file an amended complaint as directed above **by October 24, 2024**, his claims for deliberate indifference to medical need, malicious prosecution, false arrest, violation of the right to equal protection, and defamation, are dismissed **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) without further order of the Court; and it is further

ORDERED that the Clerk of Court shall send to Plaintiff: (1) a copy of this Order; (2) a copy of the Complaint (Dkt. 1); (3) a copy of the supplemental Complaint and exhibits (Dkts. 9 and 9-1); (4) a blank Section 1983 form; (5) the Court's instructions on completing an amended complaint; and (6) a copy of the Court's "Notice Regarding Service of Summons of Complaint With Attached Request for U.S. Marshal Service"; and it is further

ORDERED that the Clerk of Court shall restrict access to the supplemental Complaint and attached exhibits, Dkts. 9 and 9-1; and it is further

25

ORDERED that, if Plaintiff wishes to request assistance with service, he must complete and return to the Court the "Request for U.S. Marshal Service," along with the $8.00 fee, **by October 24, 2024**.

SO ORDERED.

Dated:   September 9, 2024
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE